IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

HEARTLAND CONSUMER PRODUCTS
LLC, et al.,

     Plaintiffs,

        v.

PUERTO RICO SUPPLIES GROUP, INC.,

     Defendant.

CIVIL NO. 16-1190 (PAD)

## OPINION AND ORDER

Delgado-Hernández, District Judge.

Plaintiffs, Heartland Consumer Products, LLC and TC Heartland LLC (collectively, "Heartland") brought a lawsuit against Puerto Rico Supplies Group, Inc., seeking declaratory relief under Puerto Rico's Dealer's Contract Act, P.R. Laws Ann. tit. 10 §§ 278-278e (Docket No. 1). PR Supplies answered the complaint and counterclaimed, seeking $5.6 Million in damages (Docket No. 18 at pp.16-27). Before the court is Heartland's "Motion to Dismiss for Failure to Join an Indispensable Party or for Joinder of Required Party" (Docket No. 27), which PR Supplies opposed (Docket No. 35). Heartland replied (Docket No. 39), and PR Supplies surreplied (Docket No. 39). For the reasons stated below, the motion to dismiss is DENIED.

## I.  BACKGROUND[1]

### A.  The Parties

Heartland Consumer Products LLC, a corporation organized under the laws of Delaware, is the holder of certain intellectual property rights and trademarks related to Splenda (Docket No. 1 at ¶¶ 2-3). TC Heartland LLC is a sister company of Heartland Consumer Products LLC,

---

[1] In conducting a Rule 19 analysis the court considers the pleadings as they appear at the time of the proposed joinder. See, Plan de Salud de la Federación de Maestros de Puerto Rico v. Puerto Rico, 552 F.Supp.2d 181, 182 (D.P.R. 2007)(so noting)(internal citations omitted); C. Wright & A. Miller, 7 Federal Practice & Procedure § 1604, at 40 (same).

engaged in the business of manufacturing, selling, promoting and distributing Heartland products, including the Splenda branded line. Id. at ¶¶ 4-5.  Since 2005, Heartland has been in the business of producing, manufacturing and supplying zero and low calorie sweetener products, among other products, for the retail market. Id. at ¶ 12.  PR Supplies is a corporation organized under the laws of Puerto Rico, engaged in the business of distributing products in Puerto Rico (Docket No. 18, Counterclaim at ¶¶ 3 and 6).

## B.  The Asset Purchase Agreement

Johnson & Johnson ("J&J") is a multinational supplier and manufacturer of pharmaceutical and consumer goods (Docket No. 1 at ¶ 13). It was the owner of all titles and interests in, and relating to, the business of researching, developing, manufacturing, distributing and selling Splenda branded sweetener products worldwide, including ownership of all related trademarks and patents. Id. at ¶ 14. On August 22, 2015, however, Heartland and J&J executed an Asset Purchase Agreement ("APA"), pursuant to which J&J sold, conveyed and assigned to Heartland its entire right, title and interest in the trademarks and patents relating to the research, development, manufacture, distribution and sale of Splenda-branded sweetener products.  Id. at ¶ 15.  No other line of products developed, manufactured, produced or sold by J&J, other than Splenda branded products, was included in the APA. Id. at ¶ 16.

## C.  Pre-APA commercial relationship between PR Supplies and J&J

The parties disagree as to the nature, terms and conditions of this commercial relationship, but agree that PR Supplies was a J&J customer in Puerto Rico prior to the APA and purchased Splenda-branded products for resale in the Puerto Rico market.  Id. at ¶ 21 and Docket No. 18 at ¶ 21.  Nevertheless, Heartland claims this was a "commingled" contract (Docket No. 1 at ¶ 22). In contrast, PR Supplies posits that: it was retained in 2009 by J&J to distribute in Puerto Rico a

variety of its products, including Splenda (Docket No. 18, Counterclaim at ¶ 8); since November 2009, it has exclusively distributed Splenda branded products in Puerto Rico without a written exclusive distribution contract (id. at ¶ 9); and for six years this "way of dealing" between PR Supplies and J&J ". . .granted [PR Supplies] the exclusive jurisdiction of the Splenda branded products to a specific market known in the trade as super market." Id. at ¶ 10.[2]

### D.  Post-APA events[3]

Heartland alleges that after execution of the APA, it participated in conversations with various potential business partners in Puerto Rico, including PR Supplies, to evaluate options for the sale of Splenda branded products in Puerto Rico after the cut-off date stipulated between J&J and Heartland for J&J's transition period (Docket No. 1 at ¶ 29).  It contends it never initiated or maintained a contractual business arrangement with PR Supplies regarding the Splenda branded products, or that it entered into any agreements (verbal or written) with PR Supplies for the resale of those products in Puerto Rico. Id. at ¶ 26.  Rather, on January 13, 2016, it executed a Letter of Intent with Plaza Provision, a non-party company with whom Heartland has had a "good commercial relationship" since 2008, with proposed terms for continued negotiations towards the execution of a distribution agreement to cover the resale of Splenda branded products in Puerto Rico. Id. at ¶¶ 27, 37-39.[4]  It states that PR Supplies contacted Plaza Provision and made "misleading representations," as a result of which Plaza Provision will not issue purchase orders to Heartland for any of the Splenda branded products for the customers to which PR Supplies sold

---

[2] This market purportedly includes clients such as Supermercado Pueblo, Supermercados Econo, Ralph Food Warehouse, Supermercados Mr. Special, Supermercados Supermax, Hatillo Cash & Carry and others of the same nature.

[3] The parties proffer conflicting information pertaining the events that followed the execution of the APA.  The court, however, has included in this opinion the allegations necessary to put the issue in proper context.

[4] It is alleged that from January 8 to 11, 2016, various drafts of the LOI were circulated and that Plaza Provision returned an executed copy of the final LOI to Heartland on January 13, 2016 (Docket No. 1 at ¶¶ 38-39).

Splenda, causing Heartland substantial economic damages from the market disruption and lost sales. Id. at ¶ 48.

### E.  The Complaint

Accordingly, on February 3, 2016, Heartland initiated the action asking the court to declare that under the APA, Heartland: (1) did not assume any of J&J's obligations as to any pre-existing commercial dealings between J&J and PR Supplies regarding the Splenda branded products; (ii) is not required by law to enter into any new business relationship or deal with PRS or otherwise deal with PRS; (iii) has no, and has never had, a commercial relationship with PR Supplies, nor has it breached any valid or enforceable business agreements by refusing to deal with it and entering into negotiations with other entities for the re-sale and/or distribution of Splenda branded products in Puerto Rico; and (iv) is not prohibited from selling its products, directly or through other resellers, to customers in Puerto Rico who wish to purchase them (Docket No. 1 at ¶ 55). In addition, it asserts that PR Supplies intentionally and knowingly interfered with the contractual obligations between Heartland and Plaza Provision by sending misleading letters and communications to Plaza Provision containing false allegations as to Puerto Rico's alleged distribution rights over the Splenda branded products (id. at ¶¶ 60-65); and asks for costs and attorneys and expert fees. Id. ¶¶ 66-69.

### F.  Response

Puerto Rico Supplies answered the complaint denying liability and counterclaimed, asserting a different version of the events (Docket No. 18).  It alleges that, since on or around November 2009, it was retained by J&J to distribute in Puerto Rico a variety of products, among

which was Splenda (Counterclaim at ¶ 8);[5] and from that point, it has exclusively distributed

Splenda branded products in Puerto Rico without having a written exclusive distribution contract

for the Splenda brand. Id. at ¶ 9.  It avers that PR Supplies' and J&J's way of dealing for six (6)

years granted PR Supplies the exclusive distribution of the Splenda branded products in the

"supermarket market." Id. at ¶ 10.  It contends that since the date the APA was executed until

December 30, 2015, Heartland's actions were consistent with a successor business relationship

and, in fact, continued with PR Supplies the distribution of the Splenda branded products (Docket

No. 18, Counterclaim).  It understands that under the APA, Heartland is the successor of J&J with

PR Supplies as regards the distribution of the Splenda branded products in the Island's supermarket

market. Id. at ¶ 28.

To that end, PR Supplies points out that Heartland offered it the expansion of the

distribution of Splenda branded products to other channels that were not included in PR Supplies'

business relationship with J&J. Id. at ¶¶ 23-25.  It states that around late December 2015, "for the

first time . . . [PR Supplies was] told that it will not be distributing the Splenda brand at all," (id.

at ¶ 26); and accordingly, that Heartland: (i) terminated it as exclusive distributor of the Splenda

branded products for the supermarket market without just cause; and (ii) acted tortuously and in

bad faith, depriving PR Supplies of the full distribution of the additional market that it negotiated

in good faith. Id. at ¶ 31.

### G.  The Motion to Dismiss (Docket No. 27)

With this background, Heartland requests the dismissal of PR Supplies' Counterclaim

(Docket No. 27), arguing that given PR Supplies' theory of liability under Law 75, which for

---

[5] Other products of J&J distributed by PR Supplies are of a different nature and have different distribution channels, including Listerine, J&J baby products and Neutrogena.

Heartland, makes J&J the "center of this controversy;" J&J is a required party under Federal Rule of Civil Procedure 19.  For that reason, it maintains that PR Supplies must be required to add non-party J&J in its counterclaim as a required defendant.  In the alternative, and because the deadline to amend pleadings and add parties elapsed on July 6, 2016, it states the court must find that J&J is an indispensable party without whom the counterclaim should not proceed, and dismiss the Counterclaim under Rules 12(b)(7) and 19(b). Id.

## II.     STANDARD OF REVIEW

Rule 19 governs situations where a lawsuit is proceeding without a party whose interests are central to the suit, and provides for (1) joinder of "required" parties when feasible, Fed. R. Civ. P. 19(a); and (2) dismissal of suits when joinder of a required party is not feasible and that party is indispensable, Fed. R. Civ. P. 19(b).[6]  The rule requires courts to make pragmatic, practical judgments that are heavily influenced by the facts of each case.  See, Bacardi Int'l Ltd. v. V. Suárez & Co., Inc., 719 F.3d 1, 9 (1st Cir. 2013)(citing Picciotto v. Cont'l Cas. Co., 512 F.3d 9, 14–15 (1st Cir. 2008)).  It is designed to protect the interests of parties who are not yet involved in ongoing litigation, such that parties should be joined, when feasible, if they are so required according to the criteria laid out in Rule 19(a).  If a required party cannot be joined in the action without divesting the court of subject-matter jurisdiction, Rule 19(b) sets forth additional criteria for determining whether the party is "indispensable." If the court finds that the party is anything less than indispensable, the case proceeds without said party.  But if the court finds that the litigation cannot proceed in the party's absence, the case must be dismissed.  See, Jiménez v. Rodriguez-Pagán, 597 F.3d 18, 25 (1st Cir. 2010)(internal citations and footnote omitted).

---

[6] While Rule 19 refers to "required" parties, the First Circuit and other circuits, have "continued to cling" to the term "necessary" used in a superseded version of Rule 19. Jiménez v. Rodríguez-Pagán, 597 F.3d 18, 25 n.3 (1st Cir. 2010).

Heartland Consumer Products LLC, et al. v. Puerto Rico Supplies Group, Inc.
Civil No. 16-1190 (PAD)
Opinion and Order
Page 7

### A. Required Party under Rule 19

To find that J&J is a required party under Rule 19, the court must conclude that: (A) in J&J's absence, the court cannot accord complete relief among existing parties; or (B) J&J claims an interest relating to the subject of the action and is so situated, that disposing of the action in its absence may: (1) as a practical matter, impair or impede J&J's ability to protect that interest; or (2) leave an existing party subject to a substantial risk of incurring in double, multiple or otherwise inconsistent obligations because of the interest. See, Fed.R.Civ.P. 19(a)(1).  Heartland considers that J&J is a required party under both sub-parts (A) and (B) of Rule 19(a)(1) (Docket No. 27 at p. 6).[7]

> i.   *Whether the court can accord complete relief among existing parties in J&J's absence.*

Heartland asks the court to answer this question in the negative.  In essence, it argues that J&J's interests are implicated here because, from its perspective, based on the Counterclaim it is clear that J&J is a party to the commercial agreement that PR Supplies invokes as the basis for its claims and pursuant to which it allegedly gained protection as an exclusive distributor under Law 75 (Docket No. 27 at p. 6).  Along that line, to adjudicate PR Supplies' claim for damages under Law 75 against Heartland, the court must first pass judgment on the terms and conditions of the pre-APA commercial agreement between PR Supplies and J&J – which is not in writing – to determine if it was a distributor-principal relationship protected by Law 75.  And in Heartland's view, it will also be also necessary to evaluate the nature of the APA to determine whether the agreement between J&J and PR Supplies was a "commingled contract," and not assumed by

---

[7] In its motion to dismiss, Heartland discusses sections (A) and (B).

Heartland upon acquisition of the Splenda brand. Id. at p. 7.[8]

As support, Heartland directs the court's attention to several cases, including H.D. Corp. of Puerto Rico v. Ford Motor Co., 791 F.2d 987, 992-993 (1st Cir. 1986), claiming that "where is 'clear from the face of the complaint that plaintiff's . . . claims are largely directed against [non-party] parent company'" then non-party has a substantial interest in the outcome of the dispute" (Docket No. 27 at p. 8). But none of the allegations or claims in the Counterclaim are directed against J&J. Nowhere is it alleged that J&J is responsible or at fault, or is taking part in the harmful acts described in the complaint. To the contrary, the claims are directed at Heartland, not J&J, making Heartland the only cause of PR Supplies damages.[9] So it is hard to conclude that J&J is a required party under Rule 19(a)(1)(a). That PR Supplies must prove that a commercial agreement protected by Law 75 with J&J was in place, does not alter this conclusion, for J&J's absence would not prevent the court from affording complete relief among existing parties.

ii.     The other two criteria of Rule 19(a)(1)(B)

Heartland asks for joinder under the other two criteria of Rule 19 (a)(1)(B). That is: (1) J&J's ability to protect its interest; and, without it, (2) if there is a substantial risk one of the existing parties would be subject to double, multiple or inconsistent obligations. Yet PR Supplies has not claimed any monetary interest from J&J. To the contrary, from the Counterclaim the only interests at stake are Heartland's. Similarly, in its motion, Heartland points to no real interest of J&J that would be adversely affected due to its absence in this case. The possibility of J&J's being

---

[8] In its motion, Heartland explains that it cannot bring in this action a claim directly against J&J because of a mandatory forum selection clause in the APA, which would mean successive litigation in separate forums regarding the terms of that agreement (Docket No. 27 at p. 9). In its view, it will prejudice both Heartland and J&J from successive litigation and potentially contradicting obligations. The court does not agree. See, discussion at Section II.A(ii).

[9] In fact, PR Supplies asserts in the Counterclaim a cause of action for dealing in bad faith after the APE was executed by J&J and Heartland.

liable to PR Supplies or Heartland under the APA is not at issue.  In the case of PR Supplies, no claims against J&J were included in the Counterclaim as the facts in support of its alleged damages followed the execution of the APA.  And in the case of Heartland, it can always sue J&J – if it wishes – following the procedure included in the APA, should PR Supplies prevail in the Counterclaim.  At that time, J&J and Heartland will be free to assert and defend any interest they might have under the APA.

Similarly, even without J&J's participation there is no substantial risk of multiple or inconsistent obligations.  As PR Supplies correctly noted: if Heartland is liable to PR Supplies here and another court finds that Heartland does not have indemnity from J&J, there is no multiple or inconsistent obligation taking place. If, on the other hand, the other court finds that J&J is liable to Heartland, there is no multiple obligation either.[10]  See, Bacardi Intern. Ltd., 719 F.3d at 12 ("[i]nconsistent obligations occur when a party is unable to comply with one court's order without breaching another court's order concerning the same incident.")(internal citations omitted); Delgado v. Plaza las Américas, 139 F.3d 1, 3 (1st Cir. 1998)(same).[11]

### III.   CONCLUSION

In view of the foregoing, further elaboration is not necessary.  For the reasons stated, Heartland's Motion to Dismiss is DENIED.

---

[10] That is, because J&J was required to disclose its distribution agreement with PR Supplies as part of the APA with Heartland. But whether or not J&J had an obligation with Heartland to make such disclosure is ultimately an issue between Heartland and J&J, one separate and distinct from the issues presented in PR Supplies' Counterclaim.

[11] Absent a determination that J&J is not a required party under Rule 19, there is no need to discuss Heartland's alternate contention that J&J is an indispensable party. See, Temple v. Synthes Corp., Ltd., 498 U.S. 5, 8 (1990)(no inquiry under Rule 19(b) is necessary, because the threshold requirements of Rule 19(a) have not been satisfied).

Heartland Consumer Products LLC, et al. v. Puerto Rico Supplies Group, Inc.
Civil No. 16-1190 (PAD)
Opinion and Order
Page 10

**SO ORDERED.**

In San Juan, Puerto Rico, this 31st day of January, 2017.

s/Pedro A. Delgado-Hernández
PEDRO A. DELGADO-HERNÁNDEZ
United States District Judge